IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

VICTOR ROBERT BROWN,

                          Plaintiff,                          OPINION AND ORDER

         v.                                                   20-cv-180-wmc

DR. RIBAULDT, 10 RNS OF CCI JOHN DOES,
10 RNS OF CCI JANE DOES,
UNIT MANAGER JOHN/JANE DOE,
HSU MANAGER JANE DOE,
X-RAY HEALTH PERSONNELL JOHN/JANE DOE,
RN JOHNSON, LT. ANDERSON, M. GLASS,
M. LEISER, ALSUM-O'DONNELL, ROWHER,
WARDEN JOHN/JANE DOE, and
MAINTENANCE WORKER DOE,

                          Defendants.

---

*Pro se* plaintiff Victor Robert Brown, an inmate at Columbia Correctional Institution ("CCI"), brings this proposed civil action under 42 U.S.C. § 1983 against various CCI and Wisconsin Department of Corrections ("DOC") employees. Brown has also filed a motion for a temporary restraining order and preliminary injunction (dkt. #2) and six related supplemental declarations (dkt. ##3 8, 9, 11, 12, 15).

While Brown has paid the filing fee[1] and his complaint is ready for screening as required by 28 U.S.C. § 1915A, his complaint, outlining unrelated groups of claims and defendants, violates Federal Rule of Civil Procedure 20. Accordingly, before the court can screen his complaint, Brown will be required to choose which lawsuit he would like to proceed on under this case number, and indicate whether he wishes to open another lawsuit

---

[1] Accordingly, the court will deny as moot Brown's motion to waive the filing fee (dkt. #4) without further comment.

to pursue his other claims.  Regardless of which lawsuit he seeks to pursue, in light of the numerous supplements, the court also will require Brown to submit an amended complaint. In drafting that amended complaint, Brown should avoid asserting allegations against groups of defendants as described below.  Finally, Brown's motion for preliminary injunctive relief will be denied without prejudice.

## ALLEGATIONS OF FACT[2]

The events outlined in Brown's complaint all occurred at CCI.  Brown names as defendants:  Inmate Complaint Examiners M. Glass, M. Leiser, and Aslum-O'Donnell; Dr. Ribauldt; RN Johnson; Health Services Manager ("HSU") Jane Doe; 10 RNs of CCI John Does; 10 RNs of CCI Jane Does; X-ray Health personnel John/Jane Doe; Unit Manager John/Jane Doe; Lt. Anderson, Officer Rowher; Warden John/Jane Doe; and Maintenance Worker John/Jane Doe.

### A.  Mishandling of Inmate Complaints

Brown claims that defendants M. Glass, M. Leiser, and Aslum-O'Donnell have thwarted routinely his ability to pursue grievances via the inmate complaint review system. Even though Brown follows the procedures and requirements specified in Wis. Admin. Code ch. DOC 310, these inmate complaint examiners have nonetheless rejected all but two or three of his inmate complaints for various reasons "that are unwritten anywhere"

---

[2] In addressing any *pro se* litigant's complaint, the court must read the allegations generously, resolving ambiguities and drawing reasonable inferences in plaintiff's favor.  *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

including:  (1) indicating a date range for an incident rather than a specific date; (2) using correction tape on his complaints; and (3) allegedly raising multiple, unrelated issues in a single complaint.  For example, Brown notes that a complaint alleging that staff denied Brown magazines was rejected for raising more than one issue, as was a complaint alleging that the warden had not addressed "the issues [Brown] brought to her attention" and that Brown had been unable to leave his cell to file legal work.  Brown does not indicate when he filed any of these complaints, or which of the three examiner defendants rejected which complaint.

### B.  Self-harm Incident in January 2020

On January 16 or 18, 2020, Brown inserted a five-inch rolled up piece of paper into his arm.  Brown alerted defendant Correction Officer Rowher, who offered Brown a bandage and advised that he could treat Brown "to the level of his training."  Brown suggests that he may have spit on Rowher in response, causing Rowher to leave and then return and deploy spray.

Brown exited his cell and went to the HSU after being sprayed.  There, he told defendants Lt. Anderson and RN Johnson that he did not want treatment.  Anderson responded that the paper in Brown's arm was contraband that Johnson was going to remove regardless of what Brown wanted.  Brown suffered "extreme agony" as Johnson removed the paper while Brown was strapped down in a chair.  Johnson then bandaged Brown's wound over his opposition.

After this treatment, Brown was placed in ambulatory restraints, handcuffed and left in the observation area for about five days.  The handcuffs caused Brown painful

swelling for which HSU denied him anti-inflammatory medication. Moreover, the observation area lacks heating and ventilation, so the temperature only reaches approximately 47 degrees during the day and falls to between 30 and 40 degrees at night. Because Brown was improperly clothed, he was extremely cold there. Brown indicates that defendants Warden John/Jane Doe and Maintenance Worker John/Jane Doe generally were aware via complaints from other inmates of the temperature control issue in the observation area. Brown does not indicate whether he actually complained to anyone about the cold temperatures and his lack of proper clothing, nor does he specify who improperly handcuffed him, and who in the HSU denied him anti-inflammatory medication and when.

### C. Denial of Daily Wound Care

Brown was placed on a regimen of daily wound care on or about December 15, 2019, because of his "savage self[-]harm." He claims that he has been refused wound care at least forty times since, resulting in a dirty arm wound and worsening infection. Brown generally implicates defendant HSU Manager Jane Doe, and defendants 10 RNs of CCI John Does and 10 RNs of CCI Jane Does without providing details regarding which individual defendant refused him wound care and when, to whom he complained, or what response, if any, he received.

### D. Denial of Treatment in February 2020 after an Incident of Self-Harm

On February 12, 2020, Brown saw defendant Dr. Ribauldt to remove a "foreign body" sticking out of Brown's arm. After Ribauldt removed the object, Brown also

consulted with the doctor "about several other metal and plastic objects deep in [Brown's] arm." Brown requested effective pain medication, antibiotics, a cuff-in-front restriction, an arm sling and extra pillow, and an order requiring HSU "not to allow any refusals without [Brown's] signature." Ribauldt denied all of Brown's requests.

Brown saw Dr. Ribauldt again the next day and learned that the doctor had ordered an x-ray of Brown's arm. When Brown asked Ribauldt what the doctor was going to do about Brown's painful arm infection in the meantime, Ribauldt said that he was going to leave Brown's wound open. Ribauldt explained that the infection was "actually a good thing because it'll help get the metal out. The infection will eat away at [Brown's] tissue eventually opening a hole in [Brown's] skin where the metal can come out all on its own." Brown objected, stating that he was in extreme pain and that he wanted the metal removed and immediate antibiotic treatment. Ribauldt washed his hands and left.

Brown also implicates defendant HSU Manager Jane Doe in this incident but does not indicate how she was involved. As for defendant X-ray Health personnel John/Jane Doe, Brown notes that an x-ray was ordered, but he does not state any specific allegations in his complaint against this individual either.

### E. Refusal to Provide Brown a Nutritional Substitute for Cheese

Brown suffers from constipation, irritable bowel syndrome, and hemorrhoids. In his current housing unit, he receives two pieces of cheese every day instead of milk. Because he cannot get milk or a nutritionally equivalent substitute, Brown will not "get the nutrients everyone else gets" unless he eats the cheese. Eating the cheese, however, causes him to be constipated for five to nine days at a time and then results in pain and anal

5

bleeding when he does defecate.  Brown asserts that this has been an ongoing problem since October 17, 2019, and that "officials refuse to place [him] on a diet that does not cause [him] unwanton pain and suffering."

Brown told defendant Dr. Ribauldt about this situation on February 13, 2020.  The doctor instructed Brown to use his hemorrhoidal ointment or refrain from eating the cheese.  Brown responded that his ointment was ineffective, to which Ribault replied that there was nothing else he could do for Brown.  Brown also implicates defendant Unit Manager John/Jane Doe in this ongoing issue but fails to indicate how this individual is personally involved.

## OPINION

### I.  Rule 20

Plaintiff seeks monetary damages as well as injunctive relief.  However, the court cannot screen his allegations at this point because they appear too unrelated to satisfy the requirements of Federal Rule of Civil Procedure 20.  Rule 20 permits a plaintiff to join multiple defendants together in one lawsuit if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  This means that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."  *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012).  If a complaint includes unrelated claims against different defendants in violation of Rule

20, a court may order that the lawsuit be severed.  *Lee v. Cook Cty., Illinois*, 635 F.3d 969, 971 (7th Cir. 2011); *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007).  Once the requirements of Rule 20 are satisfied, a plaintiff may then join additional, unrelated claims against those same defendants under Rule 18(a).

Plaintiff has not articulated the nature of the claims he is seeking to pursue in this lawsuit, but he appears to be seeking relief for all the events he outlines in his complaint. He may not pursue all his grievances in this lawsuit, however, because his allegations can be grouped into at least three different lawsuits:

> **Lawsuit 1:  Plaintiff's claims against Inmate Complaint Examiners M. Glass, M. Leiser, and Aslum-O'Donnell related to their mishandling of most of his inmate complaints.**

> **Lawsuit 2:  Plaintiff's claims against Warden John/Jane Doe and a John/Jane Doe maintenance worker related to the cold temperature in the observation area.**

> **Lawsuit 3:  Plaintiff's claims against various prison employees and medical personnel related to his efforts to refuse or obtain medical care after self-harming from January 2020 to the present day and to his efforts to alleviate his digestive problems from October 2019 to the present day.**

It is true that the alleged events underlying each of these potential lawsuits occurred at the same institution, but the claims plaintiff appears to be pursuing are unrelated.  He appears to believe that certain inmate complaint examiners have generally mishandled his inmate complaints at CCI in violation of his constitutional right to due process; that Warden John/Jane Doe and a Doe maintenance worker have disregarded inmate complaints about the extremely cold temperatures in the observation area and thus subjected plaintiff to conditions of confinement while housed there that violated his Eighth Amendment rights; and that certain jail guards and medical personnel have acted with

deliberate indifference either to plaintiff's refusal of medical treatment after self-harming or to plaintiff's serious medical needs resulting from self-abuse or from a failure to accommodate his dietary restrictions.  Given that these three sets of claims involve wholly separate groups of defendants and unrelated series of events, the court concludes that the complaint does not satisfy the requirements of Rule 20.

Accordingly, the court will direct plaintiff to respond to this order explaining how he wishes to proceed on his claims.  Plaintiff may proceed under this case number on only *one* of the lawsuits identified above.  If he wishes also to pursue the other two lawsuits, he must do so by filing a separate complaint related to those claims, which will be assigned a new and distinct case number.  Plaintiff will be required to pay a separate filing fee for any additional lawsuit on which he chooses to proceed.

In addition to selecting one lawsuit to pursue, the court also will require plaintiff to submit an amended complaint that addresses the following issues.  First, based on plaintiff's most recent filings, it appears that he is primarily concerned with the claims related to his medical needs.  Should he decide to proceed on those allegations of deliberate indifference in this lawsuit, plaintiff should be aware that there are several defendants against whom plaintiff has not asserted any specific allegation of wrongdoing in the complaint.  For example, plaintiff does not indicate in his complaint how or when HSU Manager Jane Doe, X-ray Health personnel John/Jane Doe, and Unit Manager John/Jane Doe became aware of his medical needs and how they responded.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference requires actual knowledge of and conscious disregard for a substantial risk of serious harm to a prisoner).  Moreover,

8

mentioning "10 RNs of CCI John Does" and "10 RNs of CCI Jane Does" in describing the repeated denial of his daily wound care without specifying when each of these denials occurred or how any individual Doe defendant became aware and responded, plaintiff relies on "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct." *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). If plaintiff decides to pursue lawsuit #3, he must submit an amended complaint that provides more specific allegations with respect to these defendants if he wants to avoid dismissal.[3]

Similarly, if plaintiff chooses to proceed on lawsuit #2 challenging his conditions of confinement, there are a number of issues he should address in an amended complaint. Indeed, although plaintiff alleges that the defendants Warden John/Jane Doe and Maintenance Worker John/Jane Doe were generally aware of cold temperatures in the observation area, plaintiff does not allege facts from which this court could reasonably infer that these defendants actually knew he had been housed there without appropriate clothing yet turned a blind eye. "To succeed in a conditions of confinement claim, of course, a prisoner must . . . show that prison officials were deliberately indifferent to his needs." *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997); *see Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (explaining that if an inmate establishes that the prison conditions at issue were sufficiently serious, a court must then determine whether prison officials acted

---

[3] In plaintiff's several declarations (dkt. ##3, 8, 9, 11, 12, 15) filed in support of his motion for injunctive relief (dkt. #2), he includes new information regarding his ongoing efforts to seek medical treatment for his arm. If plaintiff decides to pursue his medical needs claims in this lawsuit and wants the court to consider some or all of this information when screening the complaint, he should include these additional allegations or defendants as instructed in this order.

with deliberate indifference to those conditions).

Without additional allegations clarifying what any of these defendants actually knew about plaintiff's circumstances and how they responded, plaintiff may not be allowed to proceed against them. That is because Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" and thus provide notice to the defendants of what plaintiff believes they each did to violate his rights. Also important here, to demonstrate liability under § 1983, a plaintiff must allege sufficient facts showing that an individual personally caused or participated in a constitutional deprivation. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional violation") (citation omitted). A prison official cannot be held liable solely by virtue of his or her supervisory role. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisory role over others).

The court will give plaintiff a brief window of time, until **[three weeks], 2020,** to specify for the court which one of the lawsuits identified in this opinion he wishes to pursue under the case number assigned to his complaint and file an amended complaint. Plaintiff should draft that amended complaint as if he were telling a story to someone who knows nothing about the events at hand, focusing on providing a timeline of the materials events. He should be sure to identify the specific defendants who are being sued, the specific actions taken by each defendant that plaintiff believes violated his rights and when those events took place. Additionally, he should take care to include *all* his allegations in his

10

proposed amended complaint and *only* the claims arising from the same transaction or occurrence or series of transactions or occurrences.

Since it is not clear at this time which potential lawsuit plaintiff will pursue, he should be aware that the court has not reached any opinion about the merits of any claims he raises. Once plaintiff identifies which lawsuit he wants to litigate under this case number, the court will screen his proposed amended complaint as required by § 1915A. If plaintiff disagrees with the way the court grouped his claims, or if he believes the court has left out claims he intended to assert, he may also raise those objections in his response, provided that he still complies with this order and chooses which lawsuit he wants to pursue. If he fails to do this, the court will have no choice but to dismiss all his claims for failure to prosecute this case.

## II. Motion for Injunctive Relief

Finally, plaintiff requests injunctive relief related to the same unrelated claims stated in the complaint. Specifically, plaintiff asks this court to require defendants to: (1) accept his inmate complaints as filed and waive limits on how many complaints plaintiff can file in a week or two weeks; (2) provide him milk or a nutritionally equivalent substitute that is not cheese; (3) turn on the heat in the observation area; (4) send plaintiff to the hospital to have foreign objects removed from his arm; (5) provide plaintiff effective pain treatment and antibiotics; (6) send anyone "who inserts foreign bodies that cannot be treated by HSU within 24 hours" to the hospital; and (7) refer plaintiff to a mental health institution for treatment that DOC "will not provide."

In his supplemental declarations, plaintiff alleges continued imminent danger based

11

on the ongoing pain and infection resulting from a foreign object or objects still inside his arm.  Plaintiff notes in his two most recent such filings that although he is now receiving daily wound care and antibiotics, and that his arm is healing, "the defendants" are still refusing to schedule removal surgery because of the coronavirus or to prescribe any effective plain treatment for his "extreme crying pain."  (Dkt. ##12, 15.)

The court will construe this motion as requesting a preliminary injunction.  (*See* dkt. ##8, 9, 11, 12 (referring to the motion for preliminary injunction).)  To prevail on such a motion, a plaintiff must show:  (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted.  *See Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).  Plaintiff's filings focus almost exclusively on irreparable harm.

As it is unclear which claims plaintiff will ultimately pursue in this lawsuit, the court must deny this motion, albeit without prejudice to its renewal once plaintiff decides how he will proceed.  If plaintiff does renew this motion, he must follow this court's procedures for seeking a preliminary injunction, a copy of which will be sent to him along with this opinion.  Also, in renewing a motion for injunctive relief, plaintiff must make sure that the relief he is seeking is related only to the claims he decides to pursue in this lawsuit.

ORDER

IT IS ORDERED that:

1) Plaintiff Victor Robert Brown has until **June 4, 2020**, to respond to this by indicating which of the three lawsuits he would like to pursue in this case and file an amended complaint.

2) No later than **June 4, 2020,** plaintiff must also inform the court whether he wishes to continue to prosecute his other claims as separate lawsuits or withdraw them voluntarily.  If plaintiff dismisses those other claims voluntarily, he will owe no further filing fee.  If plaintiff advises the court that he intends to prosecute his other lawsuits separately, he will (1) owe a separate $400 filing fee for each new lawsuit and (2) need to file a separate complaint setting forth his claims in that lawsuit.

3) If plaintiff fails to respond to this order by **June 11, 2020,** the court will dismiss without prejudice the entire lawsuit based on plaintiff's failure to prosecute it.

4) Plaintiff's motion to waive the filing fee (dkt. #4) is DENIED as moot.

5) Plaintiff's motion for preliminary injunctive relief (dkt. #2) is DENIED without prejudice.

Entered this 14th day of May, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge