IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

VICTOR BROWN,

                       Plaintiff,                      OPINION AND ORDER

     v.

                                                20-cv-180-wmc

JUSTIN RIBAULT, KYLE ZENK,
ASHLEE WOODS-CIRKS, DANIEL NORGE,
KELSEY STRANGE, THEODORE ANDERSON,
SHAYNE LLOYD, CHRISTOPHER OLSON,
JOSHUA BENDER, JESSIE DICKRELL,
KAYLENE BETANCOURT, DANIELLE ROBINSON,
EVAN BROYLES, JUSTIN ROHWER, APRIL COEY,
LUCINDA BUCHANAN, and JULIA PERSIKE,

                       Defendants.

Plaintiff Victor Brown, an inmate at Columbia Correctional Institution ("CCI") who is representing himself, is proceeding with an Eighth Amendment claim for failure to protect and deliberate indifference. (Dkt. #50.) More specifically, Brown claims that defendants, who are correctional and medical staff at CCI, failed to protect him against self-harm on multiple occasions in 2019 and 2020, as well as to provide him with adequate medical treatment after four of those occasions.

Defendants have moved for partial summary judgment on the grounds that Brown failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") with respect to certain of his Eighth Amendment claims. (Dkt. #104.) While defendants have met their burden of proving that Brown failed to exhaust his remedies as to some of his claims, they have not done so with respect to all. Accordingly, defendants' motion must be granted and denied in part.

OPINION

Under the PLRA, "[a]n inmate complaining about prison conditions must exhaust administrative remedies before filing suit." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). Moreover, exhaustion is not only mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), it "requires complying with the rules applicable to the grievance process at the inmate's institution." *Conyers*, 416 F.3d at 584; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

To exhaust administrative remedies in Wisconsin, therefore, a prisoner must follow the Inmate Complaint Review System ("ICRS") process set forth in Wisconsin Administrative Code Chapter DOC 310, which requires the prisoner to file a signed complaint with the Inmate Complaint Examiner ("ICE") within 14 calendar days of the event giving rise to the complaint. Wis. Admin. Code § 310.07(2)-(3). The complaint must also provide sufficient information for the department to investigate and decide the complaint. *Id.* § 310.07(5)-(6). However, an inmate's *failure* to exhaust constitutes an affirmative defense, which defendants must prove. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

As noted previously, defendants move for summary judgment on the grounds that Brown failed to exhaust his Eighth Amendment claims for failure to protect and deliberate indifference. In their opening brief, defendants contend that Brown failed to exhaust his administrative remedies as to all claims, including a total of five sets related to failures to protect against self-harm and three related to failures to provide adequate healthcare. (Dkt.

#105, at 2.)   Defendants have since conceded that there are material issues of fact precluding summary judgment on his claims arising out of two of the alleged failures to protect against self-harm and one of the alleged failures to provide adequate healthcare. (Dkt. #126, at 1.)   As a result, summary judgment is not appropriate on exhaustion grounds as to any of those claims.   Instead, the court turns to the claims still in dispute as to exhaustion, which relate to the three, other alleged failures to protect plaintiff from self-harm on December 18 and 19, 2019, December 25 and 30, 2019, and January 16 and 18, 2020, as well as the two other alleged failures to provide adequate medical care on December 20, 2019, December 30, 2019, and January 16, 2020.   The crux of defendants' argument is that Brown failed to exhaust each of these claims against defendants because he:   (1) did not sign one of the relevant complaints, and (2) failed to timely file the rest. The court analyzes each of the complaints in turn.

## I.  Unsigned Complaint

The record shows that Brown filed an unsigned inmate complaint on or about December 23, 2019, regarding an act of self-harm on December 19, 2019.  (Dkt. #108-5, at 3.)  The Court of Appeals for the Seventh Circuit has held that an inmate's complaint will suffice for exhaustion purposes if it provides notice of "the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).  Though the complaint provided to the court is difficult to read, defendants do not dispute that its substance would have placed them on notice of Brown's grievance.  Instead, they contend that his failure to sign the complaint runs afoul of the Wisconsin Administrative Code's requirement that all grievances be signed.  (Dkt. #126, at 2.)  As defendants point out, if

prison officials reject a prisoner's grievance for failing to comply with a procedural requirement and decline to address the merits of the grievance -- as the ICE did here (dkt. #108-5, at 4) -- that prisoner has *not* exhausted his administrative remedies, and any lawsuit he later files must be dismissed. *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002); *see also Webb v. Bender*, 717 F. App'x 642, 644 (7th Cir. 2018) ("We must respect the prison's proper invocation of its procedural rules[.]").

In response, Brown represents that he was unable to exhaust because he was under restrictions that were imposed on December 19, 2019, making his administrative remedies unavailable to him.  (Dkt. #118, at 3.)  An administrative remedy is not "available" to an inmate, and therefore need not be exhausted, if prison officials (1) erroneously inform an inmate that the remedy does not exist or (2) misrepresent the steps he needs to take to pursue it.  *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011).  Neither exception applies here.   Remedies can also be unavailable where prison employees "use affirmative misconduct to prevent a prisoner from exhausting."  *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  Again, this exception does not apply.

While Brown also argues that he was either unable to access paper or writing implements at certain times relevant to his grievances or, in the alternative, prevented from dictating his complaint to prison staff, he does not dispute submitting his unsigned complaint on December 23, 2019, which shows that he *did* have access to writing supplies and was not prevented from accessing the prison remedy process.  Nor is there evidence to infer that any restrictions placed on Brown on December 19 kept him from later filing a signed complaint as required by prison regulations, seeking assistance from correctional

officers to do so, or challenging the ICE's rejection of his original complaint as unreasonable under the circumstances.  (Dkt. #107-1, at 3 and Dkt. #127, at 2-3.)  Accordingly, defendants have shown that Brown failed to exhaust his administrative remedies with respect to the grievance arising out of the events of December 19, 2019.

## II. Untimely Complaints

The remaining complaints at issue -- all filed by Brown on February 10, 2020 and returned to him that same day -- relate to allegations that defendants could and should have prevented his self-harm on December 18, 25, and 30, 2019, as well as on January 16 and 18, 2020.  (Dkt. #108-5, at 1-2, 5-9, 18-24.)  Again, defendants argue that Brown failed to exhaust his administrative remedies with respect to those allegations because his complaints were untimely filed.  (Dkt. #105, at 8-10.)  Brown concedes that each of those complaints were filed more than fourteen days after the events in question, making them untimely under Wis. Admin. Code § 310.07(2)-(3), but argues that administrative remedies were again unavailable to him because:  (1) he was on a no-paper restriction at some points between December 19 and 29, 2019, preventing him from timely filing his complaints relating to the alleged events on December 18, 25, and 30, 2019; (2) he was subject to another no-paper restriction between January 17 and February 1, 2020, preventing him from filing his complaints relating to the alleged events on January 16 and 18, 2020; (3) the ICE misled him by stating that he was only allowed to submit one complaint per week, despite his complaints relating to his health and personal safety; and (4) his mental illness was so severe during the relevant period that he was unable to comply

with the prison's grievance procedures, thus rendering them unavailable.  The court addresses these contentions below.

### A. Evidence Relating to Alleged December 2019 Events

To begin, Brown argues that he was placed under a no-paper restriction after his December 18, 2019, self-harm incident, which kept him from being able to timely file grievances relating to defendants' actions on December 18 and 19.  (Dkt. #118, at 3-4.) However, Brown does not affirmatively attest that he was under a no-paper restriction for the entirety of the permitted filing period.  (*Id.* at 3 ("Because of this self-harm, he would have been put on a paper restriction."); Dkt. #107-1, at 3.)  Instead, Brown points the court to a generalized statement by a defendant prison unit supervisor that "[t]ypically, clinical restrictions are given for a set time, up to six months" (C. Olson Decl. (dkt. #107) ¶ 5), as well as his own declaration stating that he was placed on a paper restriction for "no more than 60 days" after his December 18 self-harm incident.  (Brown Decl. (dkt. #122).)

Though defendants bear the burden of proving that Brown failed to exhaust his administrative remedies, Brown cannot defeat a well-supported motion through conjecture or his own, unsupported say-so, at least where flatly refuted by hard evidence.[1]  *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690-91 (7th Cir. 2010).  Here, defendants have submitted a copy of Brown's inmate restrictions history (dkt. #107-1), which lacks any reference to a 60-day paper restriction beginning on December 18, 2019.  Plus, even if the vague,

---

[1] Where it is apparent from the parties' written submissions that a plaintiff has not exhausted his administrative remedies, an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), is not necessary.  Such a hearing is only appropriate where there are "debatable factual issues" relating to exhaustion.  *Id.* at 740.  Nor has Brown requested such a hearing.

"Other Restrictions" that Brown purports to have been under between December 19 and 20, 2019, included a paper restriction, he *still* would have had ample opportunity to timely file a complaint within 14 days.  Finally, most convincing again is the fact that Brown *did* file a complaint -- albeit an unsigned one, as discussed above -- on December 23, which flies in the face of his unsubstantiated assertions otherwise.

Similarly, with respect to the complaint arising out of his alleged December 29 and 30 self-harm incidents, Brown's argument only differs in one material way.  There, he contends that he was allowed out of his cell on December 29 to write a complaint, but was not allowed to take the complaint back to his cell because of his purported paper restriction and was instead required to give it to a prison official for safekeeping with his other property.  (Dkt. #118, at 7.)  However, Brown provides no argument with respect to the belatedly filed December 30, 2019 complaint.  In either case, Brown presents no admissible evidence suggesting that he was actually under such a restriction, nor does he assert being required to turn over the December 29 complaint other than in his unsworn brief.  *See* Fed. R. Civ. P. 56(c); Index to Preliminary Pretrial Packet, Summary Judgment Procedures (Dkt. #84) ("The court will not consider facts contained only in a brief.").

Finally, Brown argues that he did not have access to an inmate handbook that would have informed him of the guidelines he was expected to follow in his housing unit at CCI, much less the possibility that he could have dictated his complaints to CCI.  (Dkt. #118, at 4.)  In support of this claim, Brown points to identical declarations from two other inmates at CCI.  (Dkt. #120 and Dkt. #121.)  Although inmates cannot be found to have failed to exhaust procedures of which they were never made aware, *Lanaghan v. Koch*, 902

F.3d 683, 689 (7th Cir. 2018), Brown has also submitted no admissible evidence that *he* lacked awareness of those procedures, nor has he refuted defendants' representation that *all* inmates in his unit receive a handbook with any admissible evidence beyond a blanket denial and his fellow inmates' declarations that *they* had never received a handbook, either. (Dkt. # 120; Dkt. #121; Dkt. #127, at 12.)  Instead, he demands that defendants submit a receipt proving he received the relevant handbook.[2]  (Dkt. #125.)   However, Brown himself has submitted evidence indicating that he was aware of his obligations to adhere to inmate complaint filing requirements in Wisconsin prisons as early as October of 2017, and that by November 20, 2019, he had filed over 259 inmate complaints, including 42 in 2019 alone.   (Dkt. #35-5, at 6-7.)   Thus, the evidence here "is so one-sided that no reasonable fact finder could find . . . plaintiff was prevented from exhausting his administrative remedies" with respect to Brown's tardy filings arising out of his alleged December 2019 self-harm incidents.  *Santiago v. Anderson*, 496 F. App'x 630, 636 (7th Cir. 2012).

## B.  Evidence Relating to Alleged January 2020 Events

Brown also contends that he was unable to file his complaints timely as to alleged self-harm incidents on January 16 and 18, 2020 (dkt. #108-5, at 18-24), because of paper, suit, waist belt, and "hand can" restrictions placed on him after the January 16 self-harm

---

[2] Brown's request for proof of receipt was made in a "Motion for Sur-Reply," seeking the opportunity to respond to "any new facts/information" in defendants' reply brief.  (Dkt. #125, at 2.)  Because such permission is only granted where the reply brief raises new arguments that could not have been raised before, and defendants here raised no new material arguments or facts in their reply brief, Brown's motion must be denied.

event.  (Dkt. #118, at 7.)  Pointing to those restrictions, *and* again to his inability to access complaint forms or dictate complaints to CCI staff, Brown argues that his administrative remedies were unavailable.  (*Id*.)  In response, defendants maintain that Brown *was* able to timely obtain paper and complete his complaints, as evidenced by the complaints being dated January 19, 2020.  (Dkt. #126, at 4.)

Administrative remedies are not "available" to an inmate under the PLRA if an inmate is physically unable to pursue them.  *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, unlike Brown's alleged December 2019 paper restriction, it is well-documented that he *was* under a paper products restriction from January 17 through February 1, 2020, as well as a pen/pencil restriction from January 9, 2020 through January 30, 2020.  (Dkt. #107-1, at 4.)  Viewing the facts in the light most favorable to Brown, therefore, it appears he could not have plausibly had access to paper on January 19 or for several weeks thereafter -- despite the dates listed on his signed inmate complaints -- nor to the writing implements he would have needed to fill out such forms.  Accordingly, defendants have *not* met their burden of proving that Brown failed to exhaust his administrative remedies with respect to the January 16 and 18, 2020, self-harm events.

While belatedly filed due to the restrictions he was placed under, Brown's January 2020 complaints were also sufficient to place prison officials on notice of the grievances he was raising.  Those complaints adequately give notice of claims that CCI prison staff acted with deliberate indifference to his medical needs by failing to intervene before his attempts at self-harm on January 16 and 18, 2020.  (Dkt. #108-5, at 22 ("I told him 'I'm gonna cut

myself with this sharp metal I have' [and] he responded 'That's up to you' . . . shrugging his shoulders and walked away."); *id.* at 18 (describing prison staff's refusal to let Brown shower after being pepper sprayed, causing "severe burning sensations").)  Taken together, therefore, defendants are not entitled to summary judgment with respect to Brown's January 2020 complaints of deliberate indifference and failure to intervene claims.

## C. Rejected Submission of Multiple Complaints in February 2020

Brown further disputes that administrative remedies were available to him after the ICE rejected 17 complaints he filed at CCI on February 10, 2020, because he was only allowed to submit one complaint per week.  (Dkt. #118, at 8.)  As Brown correctly notes, he should have been entitled to submit more than one complaint per week if they related to his health and personal safety. (*Id.* (citing Wis. Admin. Code § 310.07(7)).)  He also would have lacked an available administrative remedy -- and been excused from PLRA's exhaustion requirement -- if prison officials either erroneously informed him that a remedy did not exist *or* inaccurately described the steps he needed to take to pursue his complaint. *Pavey*, 663 F.3d at 906.

Of course, this presupposes that plaintiff had a grievance pathway available to him in the first place, and based on the discussion above, defendants have not met their burden to show that he failed to exhaust his remedies with respect to the January 2020 complaints that remain at issue.  Still, defendants *have* met their burden with respect to the December 2019 complaints.  Because Brown had the opportunity to exhaust those complaints well before the ICE rejected his February 10 filings and simply failed to do so, he cannot rely on the ICE's rejection to argue that his remedies were somehow unavailable to him over a

month after he missed his window to file them timely.

### D. Mental Illness

Finally, Brown contends, in the alternative, that *any* failure to exhaust administrative remedies available to him must be excused because of his "many mental illnesses." (Dkt. #118, at 9.)  In support of that argument, Brown cites a series of out-of-circuit, district court cases finding that a plaintiff's mental illness or incapacitation *could* render those remedies not "available" for purposes of excusing any exhaustion requirement. (*Id.* (citing *Cole v. Sobina*, 2007 WL 4460617, at *7 (W.D. Pa. Dec. 19, 2007); *Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1019 (D. Colo. 2007); *LaMarche v. Bell,* 2005 WL 2998614, at *3 (D.N.H. Nov. 8, 2005)).)

Not only are these decisions from sister districts outside this circuit, but defendants direct the court to relevant Seventh Circuit precedent that controls the outcome here. Specifically, in *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023), the Seventh Circuit found that a prisoner's "personal circumstances" could render a prison grievance process unavailable to him, such that his failure to exhaust could be excused.  Similarly, in *Lynch v. Corizon, Inc.*, 764 F. App'x 552, 554 (7th Cir. 2019), the court determined that summary judgment based on a failure to exhaust was not appropriate where an inmate swore that defendants "prevented him from completing the grievance process by tampering with his medication dosages so that he could not think lucidly enough to do so."

Here, on the other hand, Brown has once more failed to present *any* evidence that his mental health issues *prevented* him from completing the grievance process.  Instead, as defendants point out, Brown improperly filed at least *32 inmate complaints* during the

timeframe relevant to this case.  (Dkt. #126, at 6 (citing dkt. #108-1, at 10, 11).)  While the court acknowledges Brown's medical needs and the gravity of his allegations of self-harm, it cannot find as a matter of law that that those needs or allegations excuse him from complying with the PLRA's mandatory language.  *Ross v. Blake*, 578 U.S. 632, 639 (2016).

ORDER

IT IS ORDERED that:

1) Defendants' motion for partial summary judgment on exhaustion (dkt. #104) is GRANTED in part and DENIED in part as set forth above.

2) Plaintiff's motion for sur-reply (dkt. #125) is DENIED.

3) The clerk's office shall set a scheduling conference before Magistrate Judge Boor to reset the deadlines in this case.

Entered this 16th day of September, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge